[Cite as *Yates v. Ohio State Univ. Med. Ctr.*, 2012-Ohio-6316.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

WILMA S. YATES, et al.

    Plaintiffs

    v.

THE OHIO STATE UNIVERSITY MEDICAL CENTER

    Defendant

Case No. 2010-02189

Judge Joseph T. Clark

DECISION

{¶ 1} Wilma Yates, hereinafter "plaintiff," brought this action alleging medical negligence; her husband, Roger Yates, also asserts a claim for loss of consortium. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff testified by way of deposition that in the spring of 2008, she visited her primary care physician, Charles R. Keller, D.O., at his office in Logan, Ohio with complaints of rectal bleeding and pain in her side. Dr. Keller referred plaintiff to see Michael S. Tornwall, M.D., a general surgeon at the Hocking Valley Community Hospital in Logan. Dr. Tornwall had performed a colonoscopy on plaintiff in 2003, at which time he removed two polyps that had the potential to become cancerous. Dr. Tornwall testified via deposition that when plaintiff was referred to him in 2008, based upon her symptoms and history, he decided that she should undergo another colonoscopy.

{¶ 3} Dr. Tornwall performed the procedure on May 15, 2008, and in his operative report he wrote, in part: "At the hepatic flexure there was what appears to be at least an adenoma with a focus, it was concerning for possible invasive cancer. Multiple biopsies

were obtained of this region." (Joint Exhibit 1A, p. 128.) (The hepatic flexure is the point where the ascending colon turns into the transverse colon, and it is located next to the liver.) The operative report noted that the polyp at the hepatic flexure was ulcerated, and, while the report did not detail the size of the polyp, Dr. Tornwall later testified that he could recall it being about 3 to 3.5 centimeters in diameter. Dr. Tornwall stated that he felt it would be difficult for him to attempt to remove the polyp at that time without risking perforation of the bowel. Also during the colonoscopy, Dr. Tornwall attempted to remove what appeared to be a benign polyp from the sigmoid colon, but he abandoned that effort because he was not able to obtain a good view of it and because he was concerned that plaintiff's anesthesia would soon wear off.

{¶ 4} As a result of his findings during the colonoscopy, Dr. Tornwall recommended that plaintiff have a follow-up evaluation with a specialist in the next few weeks regardless of the outcome of the biopsy studies. (On May 16, 2009, a pathology report was issued which stated that the biopsy samples were determined to be benign "portions of mildly inflamed hyperplastic polyp." Joint Exhibit 4, p. 28.) Plaintiff testified that Dr. Keller consequently arranged an appointment for her to see Mark Arnold, M.D., who practices colon and rectal surgery at The Ohio State University Medical Center. Dr. Arnold is employed with defendant as a professor of surgery and is the vice chairman of the department of surgery.

{¶ 5} Plaintiff and her husband met with Dr. Arnold at his office on June 3, 2008, and it was determined at that time that plaintiff would undergo further evaluation via colonoscopy. On July 24, 2008, Dr. Arnold performed the colonoscopy at The Ohio State University Medical Center. During the procedure, Dr. Arnold removed a benign polyp from the sigmoid colon, consistent with the polyp observed in that region by Dr. Tornwall, and he also found diverticulosis in the sigmoid colon. According to his operative report, the examination was otherwise normal and it was recommended that plaintiff undergo a follow-up colonoscopy in two years. (Joint Exhibit 4, p. 2.)

{¶ 6} Plaintiff testified that after learning of Dr. Arnold's findings and reviewing film of the procedure, she grew concerned that he may have not sufficiently examined the area of the colon with which Dr. Tornwall was concerned for a potentially malignant polyp. Plaintiff stated that she telephoned Dr. Arnold's office to inquire further and was

informed that Dr. Arnold had only seen inflammation in the area of concern, but that he recommended for her to schedule another colonoscopy in six months. Dr. Arnold testified that he has some recollection of plaintiff contacting his nurse, and that he consequently reviewed her records and confirmed that no abnormalities were found at the hepatic flexure. He added, however, that in light of plaintiff's concern, he revised his original recommendation regarding a follow-up colonoscopy such that she was advised to have one in six months rather than in two years. (Joint Exhibit 4, p. 12.)

**{¶ 7}** Plaintiff stated that a few months later, she began to feel weak and developed pain in the right side of her abdomen. As a result, she visited Dr. Keller for an examination on February 20, 2009. That visit was followed by a series of diagnostic tests over the next several weeks which revealed that plaintiff was suffering from metastatic colon cancer with metastasis to the liver. Plaintiff elected to treat the cancer through chemotherapy and a surgical procedure that removed half her colon, known as a hemicolectomy. The pathology analysis that was performed after the hemicolectomy revealed a malignant polyp that was located 2.5 centimeters, or about one inch, from the ileocecal valve, near the bottom of the ascending colon. (Joint Exhibit 1B, p. 781.)

**{¶ 8}** In her complaint, plaintiff alleges that when Dr. Arnold performed the follow-up colonoscopy, he failed to focus on the area of the colon with which Dr. Tornwall was concerned, and that this caused a delay in the detection of her cancer and thereby adversely affected her prognosis. "To prevail on a claim for medical negligence, a plaintiff must demonstrate the following three elements: (1) the existence of a standard of care within the medical community; (2) the defendant's breach of that standard; and (3) proximate cause between the defendant's breach and the plaintiff's injury." *Fritch v. Univ. of Toledo College of Med.*, 10th Dist. No. 11AP-103, 2011-Ohio-4518, ¶ 6.

**{¶ 9}** "In order to establish medical [negligence], it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions or circumstances, and that the

injury complained of was the direct result of such doing or failing to do some one or more of such particular things." *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 131 (1976).

{¶ 10} Plaintiffs presented expert testimony from Jeffrey Snow, M.D., who is board certified in both colo-rectal and general surgery and practices the same in Fort Lauderdale, Florida. In Dr. Snow's opinion, the malignant polyp that was found near the ileocecal valve after the hemicolectomy was the same polyp that Dr. Tornwall had described as being near the hepatic flexure. Dr. Snow explained that in light of both the unusual degree of twisting in plaintiff's colon and the difficulty that Dr. Tornwall had in maneuvering the scope through the colon, Dr. Tornwall's identification of the polyp as being near the hepatic flexure was a "rough location." According to Dr. Snow, the hepatic flexure is about five to six inches from the ileocecal valve, and based upon Dr. Tornwall's operative report and the pathology report from the hemicolectomy, he believes that Dr. Tornwall's stated area of concern was about four to five inches from the actual location. He acknowledged, though, that the ileocecal valve is an easily identifiable landmark that Dr. Tornwall recorded seeing during his colonoscopy and that was very near the malignant polyp, yet Dr. Tornwall did not reference this feature in describing the area that he was concerned about.

{¶ 11} Concerning the standard of care, Dr. Snow testified that when a patient is referred for a follow-up or second-opinion colonoscopy, the physician receiving that referral has a duty to understand why it was made, and that this requires reviewing the appropriate medical records and, if necessary, contacting the referring physician. He further testified that the care rendered by the physician must be focused on the area of concern that prompted the referral.

{¶ 12} Dr. Snow testified that there is no documentation in the medical records to show that Dr. Arnold paid special attention to the area of Dr. Tornwall's concern, the hepatic flexure, and that the records instead reflect that he performed a routine, general colonoscopy. Dr. Snow opined that based upon the medical records in this case, he believes that Dr. Arnold failed to pay special attention to the hepatic flexure, including spending additional time in that area during the colonoscopy and making extra passes with the scope in that area, and thereby violated the standard of care. He acknowledged, however, that if Dr. Arnold had paid sufficient attention to the area of

concern, the standard of care of would have been met whether or not he specifically documented any special attention given to that area.

{¶ 13} In Dr. Snow's opinion, if Dr. Arnold had paid sufficient attention to the area that Dr. Tornwall was concerned with at the hepatic flexure, he would have seen the malignant polyp that was ultimately found a few inches from there. Nonetheless, Dr. Snow admitted that colonoscopies are not foolproof in that they can fail to detect polyps, particularly because of anatomical differences in patients, such as folding or twisting of the bowel, or pockets of stool adhered to the bowel that can hide or obscure polyps. Dr. Snow stated that plaintiff's colon had more twisting than is normal.

{¶ 14} Plaintiffs also presented expert testimony from Barry Singer, M.D., who practices medical oncology and hematology in Norristown, Pennsylvania, and who is board certified in internal medicine, with sub-specialities in oncology and hematology. Dr. Singer opined that the polyp described by Dr. Tornwall was the same polyp removed during the hemicolectomy. According to Dr. Singer, Dr. Tornwall's description of the polyp in his operative report and in his deposition testimony was consistent with the description of the polyp that was analyzed in the hemicolectomy pathology report. He stated that the area of Dr. Tornwall's concern, at the hepatic flexure, was about four to five inches from the ileocecal valve region where the malignant polyp was found.

{¶ 15} Dr. Singer testified that the polyp removed during the hemicolectomy was poorly differentiated, and that this characteristic is indicative of an aggressive, fast-growing variety of cancer. But, he acknowledged that subsequent to plaintiff's diagnosis, the growth rate of the masses on plaintiff's liver was actually documented to be quite slow.

{¶ 16} Regardless, Dr. Singer's opinion is that during the relevant period of time, the cancer was growing at an aggressive pace. He opined that when Dr. Tornwall performed his colonoscopy in May 2008, the cancer was at "stage two," meaning that it was confined to the bowel. He further opined that when Dr. Arnold performed the follow-up colonoscopy in July 2008, the cancer had progressed to early stage three, meaning that minimal metastasis to the lymph nodes had occurred. According to Dr. Singer, in general, colon cancer is capable of curative treatment only until early stage three. Dr. Singer thus opined that if plaintiff had been diagnosed with colon cancer at or

about the time of the follow-up colonoscopy in July 2008, it would have been possible for her to survive the disease. But, Dr. Singer stated that plaintiff's diagnosis did not occur until the cancer was at stage four, meaning that it had metastasized from the lymph nodes to other organs, and that a diagnosis at that stage carries no chance of survival.

{¶ 17} Defendant presented expert testimony from William Ciroco, M.D., a colo-rectal surgeon who practices in Detroit. Dr. Ciroco opined that the polyp Dr. Tornwall described at the hepatic flexure was not the same polyp that was ultimately found near the ileocecal valve. Dr. Ciroco testified that the ileocecal valve is an easily identifiable landmark, that the hepatic flexure is in a distinctly separate area from the ileocecal valve, and that it is very unlikely that an experienced colonoscopist such as Dr. Tornwall would have so grossly mistaken the area of concern.

{¶ 18} In Dr. Ciroco's opinion, what Dr. Tornwall observed was a hyperplastic polyp, meaning a small lesion not believed to be pre-cancerous, at the hepatic flexure. He further opined that this hyperplastic polyp was either substantially removed by virtue of Dr. Tornwall removing several specimens for biopsy, or it resolved on its own. Dr. Ciroco added that while Dr. Tornwall remembered in his deposition that the polyp he saw was about three centimeters across, which is similar to the size of the malignant polyp that was ultimately removed, he made no such size estimate in his operative report.

{¶ 19} Dr. Ciroco stated that he performs between 250 and 300 colonoscopies annually, including "second-opinion" or "follow-up" procedures. He explained that the standard of care in treating patients who have been referred for such procedures is that, if the physician can understand the basis for the referral upon reviewing the relevant medical records, it is not necessary to contact the referring physician. He further explained that the standard of care during the performance of the colonoscopy requires that the area of concern be thoroughly examined, but also that the entire bowel be examined, particularly because the area of concern may have been inaccurately described. He opined that the 45-minute duration of the colonoscopy performed by Dr. Arnold is longer than is normal for a routine colonoscopy, and it was an appropriate length of time in which to perform a follow-up colonoscopy.

**{¶ 20}** Defendant also presented expert testimony from Ronald Blum, M.D., a medical oncologist who serves as the director of the cancer center and programs at both Beth Israel Medical Center and St. Luke's Roosevelt Hospital Center in New York City, and he is also a professor of medicine at Albert Einstein College of Medicine. Dr. Blum is board certified in internal medicine, with a sub-specialty certification in medical oncology.

**{¶ 21}** Dr. Blum opined that Dr. Tornwall's findings regarding the area of concern were ambiguous, and that what Dr. Tornwall probably saw was an inflammatory polyp. Dr. Blum noted that the pathology report from the biopsy specimens of the hepatic flexure indeed documented inflammation, and he explained that the malignant tumor that was ultimately removed was approximately 20 centimeters from the hepatic flexure, which he considers to be outside the area of Dr. Tornwall's concern.

**{¶ 22}** Regarding the growth rate of plaintiff's cancer, Dr. Blum acknowledged that poorly differentiated masses such as plaintiff's tend to be associated with a high growth rate, but he stated a slow growth rate is actually demonstrated by the facts of plaintiff's case, such as the documented growth rate of the tumors on the liver, as well as the fact that the metastasis to the liver was well-developed by the time it was detected in March 2009. He added that by late 2008 and early 2009, when plaintiff manifested pain and other clinical symptoms of stage four cancer, the cancer had probably been present long before then without symptoms. Dr. Blum testified that this type of cancer generally grows at a consistent rate over time, and that the known growth rate that was documented for the tumors on the liver can thus be extrapolated backward in time to determine the cancer's overall progress.

**{¶ 23}** In Dr. Blum's opinion, plaintiff had stage four cancer with metastasis to the liver in the spring and summer of 2008, when both Dr. Tornwall and Dr. Arnold performed their respective colonoscopies. According to Dr. Blum, a patient such as plaintiff with metastatic colon cancer has a 20 percent survival rate over five years, and his opinion is that plaintiff's prognosis would have been the same even if Dr. Arnold had detected the malignant tumor in July 2008.

**{¶ 24}** Upon review of the evidence presented at trial, the court finds that the treatment rendered by Dr. Arnold complied with the relevant standard of care at all

times. The court finds that Dr. Arnold, who performs hundreds of "follow-up" or "referral" colonoscopies every year, understood the concern that prompted plaintiff's referral and performed an appropriate follow-up colonoscopy that included a thorough evaluation of the hepatic flexure of the colon, which is the location identified by Dr. Tornwall as concerning for a possible malignant polyp.

{¶ 25} The court finds that the testimony of Drs. Blum and Ciroco demonstrates that what Dr. Tornwall was concerned about at the hepatic flexure was actually a benign inflammatory or hyperplastic polyp that either resolved on its own or was removed by the taking of biopsy samples. Indeed, the six biopsy specimens that Dr. Tornwall took from the hepatic flexure were determined upon pathology analysis to be benign "portions of mildly inflamed hyperplastic polyp." (Joint Exhibit 4, p. 28.)

{¶ 26} The pathology analysis performed after the hemicolectomy revealed one malignant polyp that was located about one inch from the ileocecal valve that serves as landmark at the bottom of the ascending colon, several inches from the hepatic flexure that marks the top of the ascending colon. The court finds that the malignant polyp was thus outside the area of concern that had prompted plaintiff's referral to Dr. Arnold. While Dr. Arnold's credible testimony demonstrates that he paid special attention to the hepatic flexure, no matter how thoroughly he examined that area, he would not have seen a polyp there. According to Dr. Ciroco, a physician performing a follow-up colonoscopy must also thoroughly look beyond the area of concern inasmuch as the referring physician could have inaccurately identified it, and Dr. Ciroco convincingly testified that that was exactly what Dr. Arnold did in this case.

{¶ 27} Although Dr. Arnold admittedly failed to detect the polyp near the ileocecal valve, the expert witnesses in this case agreed that colonoscopies are not perfect procedures and that due to issues such as folding or twisting of the bowel, or pockets of stool adhering to the bowel, the standard of care does not require that every polyp be detected.

{¶ 28} Additionally, the court finds that the greater weight of the evidence does not support the causation element of plaintiffs' claim. In the court's opinion, Dr. Blum's testimony concerning the growth rate of plaintiff's cancer corresponds to the medical records better and was more persuasive than the testimony of Dr. Singer, and

according to Dr. Blum, plaintiff's cancer had already metastasized to the liver by the time of the follow-up colonoscopy. All the experts in this case agreed that once metastasis to the liver had occurred, plaintiff's prognosis was terminal.

{¶ 29} Given that the court finds that plaintiffs have failed to prove their claim of medical negligence, the derivative claim for loss of consortium also must fail. *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93 (1992).

{¶ 30} Based on the foregoing, judgment shall be entered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

WILMA S. YATES, et al.

     Plaintiffs

     v.

THE OHIO STATE UNIVERSITY MEDICAL CENTER

     Defendant

Case No. 2010-02189

Judge Joseph T. Clark

JUDGMENT ENTRY

{¶ 31} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Ashley L. Oliker
Karl W. Schedler
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Gordon D. Evans II
Mark E. Defossez
495 South High Street, Suite 300
Columbus, Ohio 43215

001
Filed July 9, 2012
To S.C. Reporter January 16, 2013